IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

TWYLA Y. ATWOOD,

    Plaintiff,

v.                                                                                       Civ. No. 19-350 MV/KK

ANDREW SAUL, Commissioner of
the Social Security Administration,[1]

    Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION[2]

THIS MATTER is before the Court on the Social Security Administrative Record (Doc. 12), filed July 8, 2019, in support of Plaintiff Twyla Atwood's Complaint (Doc. 1) seeking review of Defendant the Commissioner of Social Security's decision denying Ms. Atwood's claim for disability insurance benefits. On September 16, 2019, Ms. Atwood filed a Motion to Reverse or Remand Administrative Agency Decision with supporting memorandum. (Doc. 18.) Ms. Atwood filed amendments to her motion and memorandum the following day to correct two errors. (Doc. 19.) The Commissioner filed a response in opposition to Ms. Atwood's motions and memoranda on October 7, 2019; and, Ms. Atwood filed a reply in support of them on December 4, 2019. (Docs. 20, 27.) Ms. Atwood also filed a Motion to Supplement Administrative Record on October 8, 2019, to which the Commissioner responded on October 21, 2019. (Docs. 21, 22.) Finally, Ms.

---

[1] Andrew Saul was confirmed as the Commissioner of Social Security on June 17, 2019, and is automatically substituted as a party under 42 U.S.C. § 405(g) and Federal Rule of Civil Procedure 25(d).

[2] An Order of Reference was entered on July 17, 2019, referring this case to the undersigned Magistrate Judge to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case. (Doc. 16.)

1

Atwood filed a Request for Telephonic Hearing on November 15, 2019, to which the Commissioner responded on November 29, 2019. (Docs. 23, 25.)

The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405. Having meticulously reviewed the entire record and the relevant law and being otherwise fully advised, the undersigned proposes to find that Ms. Atwood's motions to remand are well taken and recommends that they be GRANTED, and that this matter be REMANDED to the Commissioner pursuant to sentence six of 42 U.S.C. § 405(g). The undersigned further recommends that Ms. Atwood's motion to supplement and request for telephonic hearing be DENIED AS MOOT.

## I. Background and Procedural History

On June 19, 2013, Ms. Atwood applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* (AR 315-21.) In her application, Ms. Atwood alleged that she became disabled on March 31, 2011 at fifty-six years of age due to depression, diabetes, and celiac sprue. (AR 87.) Ms. Atwood completed the tenth grade and has not obtained a GED. (AR 44.) From 2003 to 2011, she worked as a secretary at her husband's automotive repair business. (AR 45.)

Ms. Atwood's application for benefits was denied initially on October 7, 2013, and on reconsideration on February 14, 2014. (AR 87-108.) On April 2, 2014, Ms. Atwood requested a hearing before an Administrative Law Judge ("ALJ"). (AR 150-51.) ALJ Myriam Rice held a video hearing on July 28, 2015. (AR 70-86.) Ms. Atwood and her counsel appeared in Roswell, and ALJ Rice presided in Albuquerque. (AR 72.) ALJ Rice took testimony from Ms. Atwood and from an impartial vocational expert ("VE"), Sandra Trost.[3] (AR 72-84, 418.) On November

---
[3] The hearing transcript incorrectly identifies the VE as Sandra Frost. (AR 72, 84, 418.)

16, 2015, ALJ Rice issued an unfavorable decision. (AR 110-22.) Ms. Atwood asked the Appeals Council to review the decision, and, on November 9, 2016, the Appeals Council remanded the matter to the ALJ for further consideration, particularly with respect to Ms. Atwood's celiac sprue and residual functional capacity. (AR 128-31.)

Pursuant to the Appeals Council's remand, ALJ Eric Weiss held a video hearing on June 11, 2018. (AR 39-69.) Ms. Atwood and her counsel appeared in Roswell, New Mexico, and the ALJ presided in Albuquerque. (AR 41.) ALJ Weiss took testimony from Ms. Atwood and from impartial VE Mary D. Weber.[4] (AR 44-68, 294-95, 451-53.) The ALJ issued an unfavorable decision on June 22, 2018; and, on February 19, 2019, the Appeals Council denied Ms. Atwood's request for review, rendering ALJ Weiss' decision the Commissioner's final decision from which Ms. Atwood now appeals. (AR 1-4, 14-30.)

## II. Legal Standards

### A. Disability Determination Process

A person must be "under a disability" to qualify for Title II disability insurance benefits. 42 U.S.C. § 423(a)(1)(E). A person is considered to be "under a disability" if she is unable

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).

The Commissioner has adopted a five-step sequential analysis to determine whether a person satisfies the statutory criteria:

(1)     At step one, the ALJ must determine whether the claimant is engaging in

---

[4] The hearing transcript incorrectly identifies the VE as Mary Webber. (AR 39-41, 44, 294-95, 451-53.)

3

"substantial gainful activity."[5] If the claimant is engaging in substantial gainful activity, she is not disabled regardless of her medical condition.

(2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment (or combination of impairments) that is severe and meets the duration requirement, she is not disabled.

(3) At step three, the ALJ must determine whether a claimant's impairment meets or equals in severity one of the listings described in Appendix 1 of 20 C.F.R. Part 404, Subpart P, and meets the duration requirement. If so, a claimant is presumed disabled.

(4) If none of the claimant's impairments meet or equal one of the listings, the ALJ must determine at step four whether the claimant can perform her "past relevant work." This step involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ must consider all of the relevant evidence and determine what is "the most [claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* Second, the ALJ must determine the physical and mental demands of the claimant's past relevant work. Third, the ALJ must determine whether, given the claimant's RFC, the claimant is capable of meeting those demands. A claimant who is able to perform her past relevant work is not disabled.

(5) If the claimant is unable to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant bears the burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is

---

[5] "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. § 404.1572(a). "[W]ork may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." *Id.* "Gainful work activity is work activity that you do for pay or profit." 20 C.F.R. § 404.1572(b).

capable of performing other work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step evaluation process is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991); 20 C.F.R. § 404.1520(a)(4).

A claimant seeking disability insurance benefits must establish the onset of disability before the date her insured status expires. *Flaherty v. Astrue*, 515 F.3d 1067, 1069 (10th Cir. 2007) (citing *Henrie v. U.S. Dep't of Health & Human Servs.,* 13 F.3d 359, 360 (10th Cir. 1993)); *Graham v. Apfel*, 149 F.3d 1190, at *1 (10th Cir. 1998); *see Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010) (claimant has "burden of proving that she was totally disabled on [her date last insured] or before"). Ms. Atwood's date last insured was March 31, 2016.[6] (AR 20, 115; Doc. 20 at 5; Doc. 27 at 1.) Thus, Ms. Atwood was required to establish that she was under a disability on or before March 31, 2016 to be entitled to disability insurance benefits under Title II.

### B. Standard of Review

The United States Supreme Court has "identified two kinds of remands under [42 U.S.C. § 405(g)]: (1) remands pursuant to the fourth sentence, and (2) remands pursuant to the sixth sentence." *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). Ms. Atwood's substantive arguments address only remand pursuant to sentence six. (*See generally* Docs. 18-1, 27; *see also* Doc. 20 at 4 n.3.) On a social security appeal, courts "will consider and discuss only those . . . contentions that have been adequately briefed." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Murrell v. Shalala*, 43 F.3d 1388, 1390 n.2 (10th Cir. 1994).

---

[6] At initial consideration and reconsideration, Ms. Atwood's date last insured was listed as December 30, 2015. (AR 87, 98.) However, ALJs Rice and Weiss, Ms. Atwood, and the Commissioner all agree that, in fact, Ms. Atwood's date last insured was March 31, 2016. (AR 20, 115; Doc. 20 at 5; Doc. 27 at 1.)

As such, in recommending a disposition of this matter, the undersigned will only consider Ms. Atwood's request for a sentence six remand.

The sixth sentence of 42 U.S.C. § 405(g) provides in pertinent part that

> [t]he court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

42 U.S.C. § 405(g); *Wilson*, 602 F.3d at 1148. Pursuant to sentence six,

> [t]he district court does not affirm, modify, or reverse the [Commissioner's] decision; it does not rule in any way as to the correctness of the administrative determination. Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding.

*Melkonyan*, 501 U.S. at 98.

> Sentence-six remands are interlocutory and non-appealable because the district court retains jurisdiction and remands solely for consideration of new evidence that wasn't before the Commissioner, and the parties must then return to court to obtain a final judgment.

*Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir. 2017).

For a claimant to be entitled to a sentence six remand, (1) the proffered additional evidence must be "new and not merely cumulative of what is already in the record"; (2) the proffered additional evidence must be "material, that is, relating to the time period for which benefits were denied, and offering a reasonable possibility of changing the [Commissioner's] decision"; and, (3) "the claimant must show good cause for the failure to obtain and present the evidence at the prior hearing." *Heimerman v. Chater*, 939 F. Supp. 832, 833–34 (D. Kan. 1996) (citing *Tirado v. Bowen*, 842 F.2d 595, 597 (2nd Cir.1988)) (quotation marks omitted); *see Nguyen v. Shalala*, 43 F.3d 1400, 1403 (10th Cir. 1994) (court may remand case without ruling on the merits where there is "new and material evidence" and "good cause for failing to incorporate such evidence in the earlier proceeding").

## III. Analysis

In support of her request for a sentence six remand, Ms. Atwood proffers seventy-two pages of medical records from the Mayo Clinic, dated from October 2016 to July 2019, most of which are not in the Administrative Record and were not before the Commissioner below.[7] (Doc. 21-1.) The Commissioner does not dispute that the additional evidence Ms. Atwood has proffered is new, nor does he dispute that she had good cause for her failure to obtain and present it to the ALJ or the Appeals Council. (*See generally* Doc. 20.) Rather, the Commissioner argues only that Ms. Atwood is not entitled to a sentence six remand because the additional evidence she has proffered is not "material." (*Id.* at 4-6.)

Evidence is material within the meaning of the sixth sentence of 42 U.S.C. § 405(g) "if the [Commissioner's] decision might reasonably have been different had the new evidence been before him when his decision was rendered." *Wilson*, 602 F.3d at 1148 (quotation marks and brackets omitted). "Implicit in this requirement is that the proffered evidence relate to the time period for which the benefits were denied." *Rhodes v. Barnhart*, 117 F. App'x 622, 625–26 (10th Cir. 2004). Thus, to justify a sentence six remand, a claimant must show that evidence post-dating the time period under review relates back to that time period. *Williams v. Barnhart*, 178 F. App'x 785, 792 (10th Cir. 2006); *Cera v. Astrue*, No. CV 10-92 MV/LFG, 2012 WL 13081849, at *9 (D.N.M. Jan. 24, 2012). The new evidence "may not relate to a later-acquired disability or the subsequent deterioration of [a] previously nondisabling condition." *Beauclair v. Barnhart*, 453 F. Supp. 2d 1259, 1269 (D. Kan. 2006) (quotation marks omitted); *Cera*, 2012 WL 13081849 at *8

---

[7] However, Dr. Thomas J. Byrne's October 10, 2016 "Supervisory Note" was included in the administrative record as Exhibit 21F at pages 8 to 10. (*Compare* AR 1084-86 *with* Doc. 21-1 at 66-67.) As such, the undersigned will not consider this document in recommending a disposition of Ms. Atwood's request for a sentence six remand.

7

("[E]vidence of a later-acquired disability, or even of the subsequent deterioration of a previously non-disabling condition . . . does not justify a 'sentence six' remand.").

The Commissioner asserts that the new evidence Ms. Atwood has proffered is not material because it "does not shed light on [her] condition during the relevant time period." (Doc. 20 at 5.) Rather, the Commissioner argues, this evidence shows that Ms. Atwood developed liver cancer "more than two-and-a-half years after her insured status expired." (*Id.*) "And evidence that was already in the administrative record confirms that there was no evidence of the cancer prior to her date last insured." (*Id.* at 2.) As such, the Commissioner reasons, "the ALJ's decision would not (and, legally, could not) have been different even if the additional evidence had been before him." (*Id.* at 5.)

There is much about the Commissioner's argument that is accurate. The new medical records Ms. Atwood has proffered do address, *inter alia*, her diagnosis of hepatocellular carcinoma ("HCC"). (*See generally* Doc. 21-1.) And, evidence already in the administrative record does confirm that Ms. Atwood did not have HCC before her date last insured. Specifically, records from Mayo Clinic providers dated September 22, 2016 and October 10, 2016 document "[n]o evidence of hepatocellular carcinoma" at that time. (AR 1081-91.) These records further document that Ms. Atwood underwent diagnostic testing likely to reveal evidence of HCC had it been present at that time, including blood tests, upper endoscopy with biopsies, computed tomography ("CT") of the abdomen and pelvis with enterography, magnetic resonance imaging ("MRI") of the abdomen and pelvis, and magnetic resonance cholangiopancreatography ("MRCP"). (AR 1081-82, 1087-91.) Thus, the Commissioner is correct that Ms. Atwood's diagnosis of HCC does not relate back to the time period for which benefits were denied and, to

the extent that the proffered records address this diagnosis, they are not material under sentence six of 42 U.S.C. § 405(g).

However, the Commissioner's argument misses a crucial point, specifically, that the new medical records Ms. Atwood has proffered, in addition to addressing her HCC diagnosis, also address her diagnoses of non-alcoholic steatohepatitis ("NASH") and cirrhosis of the liver. (*See generally* Doc. 21-1.) Further, evidence in the administrative record demonstrates that Ms. Atwood had most likely developed these conditions before her date last insured, though they were not definitively diagnosed until later. As early as April 2010, providers at the University Medical Center in Lubbock, Texas, determined that two of Ms. Atwood's liver enzymes were elevated,[8] diagnosed her with hepatic steatosis,[9] and recommended consideration of a liver biopsy. (AR 828, 837, 1221, 1224.) From late 2009 through her date last insured, Ms. Atwood experienced nausea and pain in the right upper quadrant ("RUQ") of her abdomen, and her AST and/or ALT levels were sometimes elevated. (*See, e.g.*, AR 805, 813-14 (RUQ pain and nausea, December 2009); 475, 874, 944, 1188-89 (two-year history of abdominal pain including RUQ pain and associated nausea, October 2011); 892 (elevated AST, October 2012); 588, 901-02 (elevated AST, nausea, and RUQ pain, December 2012); 540-45, 922 (intermittent RUQ pain "for the last two years" and occasional nausea, March 2013); 990 (diffuse abdominal pain and nausea, December 2013); 757 (elevated AST, September 2014); 1338 (elevated AST and ALT, September 2015); 1347, 1351, 1362-63 (elevated AST and nausea, and "increasing episodes" of RUQ pain "for several weeks"

---

[8] The liver enzymes in question were aspartate transaminase ("AST") and alanine transaminase ("ALT"). (AR 828, 1224); *see, e.g.*, https://www.mayoclinic.org/symptoms/elevated-liver-enzymes/basics/definition/sym-20050830 (last visited Jan. 3, 2020).

[9] Hepatic steatosis refers to "fatty liver," or the infiltration of fat in the liver. (AR 837); *see, e.g.*, F. Nassir *et al.*, "Pathogenesis and Prevention of Hepatic Steatosis," *Gastroenterology & Hepatology* 11(3), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4836586/ (last visited Jan. 3, 2020).

and "on several occasions" in "the last 3 to 4 years," October 2015); 1047-48, 1372, 1376 (elevated AST, and RUQ pain and nausea beginning previous night, "similar episodes in the past, multiple times," April 1, 2016); 1383 ("[c]hronic, recurrent [RUQ] . . . pain" and nausea, May 31, 2016).)[10] Notably, early symptoms of cirrhosis include nausea and RUQ pain or discomfort. *See, e.g.*, https://www.niddk.nih.gov/health-information/liver-disease/cirrhosis/symptoms-causes (last visited Jan. 3, 2020).

Two months after Ms. Atwood's date last insured expired, on May 31, 2016, the Carlsbad Medical Center ("CMC") performed a CT scan of Ms. Atwood's abdomen and pelvis, revealing "mildly heterogeneous parenchymal attenuation" of the liver and recommending a contrasted MRI or ultrasound to further evaluate. (AR 1061-62.) The CMC performed a contrasted CT scan on August 1, 2016, revealing a "nodular cirrhotic appearing liver with heterogeneous low-density appearance likely related to fatty infiltration," and again recommended follow-up imaging. (AR 1076.) By September 22, 2016, providers at the Mayo Clinic had performed a CT and MRI of Ms. Atwood's liver and, based on the abnormal results and her low platelet count, diagnosed her with "[a]pparent cirrhosis." (AR 1081-86.) On April 27, 2017, a Mayo Clinic provider expanded the diagnosis to "[p]robable NASH related cirrhosis." (AR 1127-28.) However, Ms. Atwood does not appear to have received a definitive diagnosis of NASH-related cirrhosis until November 2018.[11] (Doc. 21-1 at 42-43.) Moreover, Ms. Atwood's medical records do not delineate the progression of her liver disease until January 9, 2019, when Mayo Clinic provider Dr. Raquel

---

[10] In March 2013, a provider at the Mayo Clinic noted "significant improvement" of Ms. Atwood's RUQ pain of the previous two years following discontinuation of a diabetes medication called Janumet. (AR 922-24.) However, the provider further noted that, if Ms. Atwood had "persistent symptoms/or elevated liver tests" in the future—which she subsequently did—an MRCP should be considered. (*Id.*)

[11] This appears to be because, before that date, Ms. Atwood's providers were "fairly confident that she has cirrhosis" and wished to avoid the liver biopsy deemed necessary to prove the diagnosis. (AR 1086.)

Yokoda explained that Ms. Atwood "has a history of long-term diabetes which affect[s] the liver in the form of fatty liver disease progressing to NASH and ultimately to cirrhosis." (Doc. 21-1 at 50.)

To the extent that the new evidence Ms. Atwood has proffered establishes a previously "apparent" or "probable" diagnosis of cirrhosis, and clarifies that she progressed from diabetes to fatty liver disease to NASH and then to cirrhosis, it relates back to the time period on or before her date last insured.[12] Ms. Atwood was diagnosed with diabetes and fatty liver disease as early as 2010; she displayed symptoms of early cirrhosis from 2009 through her March 31, 2016 date last insured; and, abnormal imaging results at the end of May 2016 and the beginning of August 2016 led to a probable diagnosis of cirrhosis by September 2016. (AR 813-14, 837, 1061-62, 1075-76, 1081-86.) As such, it appears overwhelmingly likely that Ms. Atwood actually had NASH and cirrhosis well before her date last insured, even though she did not receive a probable diagnosis of cirrhosis until shortly afterward.

In addition, to the extent that the new evidence Ms. Atwood has proffered establishes her previously "probable" diagnosis of cirrhosis and clarifies the progression of her liver disease, the Commissioner's decision might reasonably have been different had the evidence been before him. *Wilson*, 602 F.3d at 1148. The ALJ discussed Ms. Atwood's diabetes only insofar as he found it to be non-severe because "managed with medication," and completely failed to address her hepatic steatosis and probable NASH-related cirrhosis. (AR 20-30.) Thus, the new evidence Ms. Atwood has proffered establishes a medically determinable impairment that the ALJ did not consider in his decision, possibly because Ms. Atwood had not yet been definitively diagnosed with it.

---

[12] To the same extent, it is also new and not merely cumulative of what is already in the record. *Heimerman*, 939 F. Supp. at 833-34.

Further, the ALJ determined that Ms. Atwood's "primary complaint in the record is abdominal pain and nausea," (AR 29), and that her statements concerning the intensity, persistence, and limiting effects of her symptoms "are not entirely consistent with the medical evidence and other evidence in the record." (AR 25.) He also suggested that her intestinal symptoms were due in part to a lack of strict compliance with a gluten-free diet.[13] (AR 26-29.) The additional medical records concerning Ms. Atwood's diagnosis of NASH-related cirrhosis provide an additional or alternative explanation for her abdominal pain and nausea during the relevant time period, and additional objective medical evidence that supports her statements regarding these symptoms' intensity, persistence, and limiting effects. As such, the Commissioner's findings regarding the consistency of Ms. Atwood's statements with the objective medical evidence might reasonably have been different had the new evidence been before him. For these reasons, this evidence is material within the meaning of 42 U.S.C. § 405(g) and supports a sentence six remand.

## IV. Conclusion

For the reasons stated above, the undersigned recommends that Ms. Atwood's Motion to Reverse or Remand Administrative Agency Decision and Amended Motion to Remand

---

[13] Before he or she may rely on a claimant's failure to comply with a recommended treatment as support for his credibility determination, an ALJ must consider "(1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse." *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) (quoting *Frey v. Bowen,* 816 F.2d 508, 517 (10th Cir. 1987)). Here, Ms. Atwood's providers noted that, as early as August 2013, her intake of gluten was "inadvertent," (AR 625); and, though she had been unable to follow a strict gluten-free diet when her mother was in the hospital in early 2014, by September 2016 she was in full compliance with it, although "there may be some mixed contamination in her household as her husband is not gluten free." (AR 667, 1081.) Thus, to the extent Ms. Atwood was noncompliant with the gluten-free diet her doctors prescribed, it appears that the noncompliance was inadvertent and justifiable. *See Schultz v. Colvin*, 32 F. Supp. 3d 1047, 1061 (N.D. Cal. 2014) (acknowledging "the rigid demands of a gluten-free lifestyle").

Administrative Agency Decision (Docs. 18, 19) be GRANTED and that this matter be REMANDED to the Commissioner pursuant to sentence six of 42 U.S.C. § 405(g). The undersigned further recommends that, assuming the substantive relief Ms. Atwood seeks is granted, Ms. Atwood's Motion to Supplement Administrative Record (Doc. 21) and Request for Telephonic Hearing (Doc. 23) be DENIED AS MOOT.

Timely objections may be made pursuant to 28 U.S.C. § 636(b)(1)(C). Within fourteen (14) days after a party is served with a copy of these proposed findings and recommended disposition that party may, pursuant to Section 636(b)(1)(C), file written objections to such proposed findings and recommended disposition with the Clerk of the United States District Court for the District of New Mexico. A party must file any objections within the fourteen-day period allowed if that party wants appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.

_/s/ Kirtan Khalsa_
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE